

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

April 24, 1959

Honorable Robert S. Calvert      Opinion No. WW-606
Comptroller of Public Accounts
Capitol Station                  Re:  Whether a garage carrying
Austin, Texas                         a stock of parts for in-
                                      stallation on customers'
                                      automobiles for repair is
                                      subject to the store tax
                                      levied by Article 1111d,
                                      Vernon's Penal Code, and
Dear Sir:                             related questions.

We quote from your opinion request as follows:

"I will thank you to advise this Department whether
or not a garage that operates under any one or all of
the four following conditions is subject to the Store
Tax as levied by Article 1111D, Vernon's Annotated
Penal Code of Texas.

"1.  Where a garage carries a stock of parts for
the primary use of installation on customers' auto-
mobiles for repair and the customers are billed
separately for the parts and for the labor.  In some
cases the parts are not billed separately from the
labor but as a complete job.

"2.  Where a garage does not carry parts in its
stock but on repair or maintenance jobs secures or
obtains parts from other places of business and in-
stalls same in customers' cars as repairs, billing
the customers separately for parts and for labor.

"3.  Where a garage carries in stock automobile
parts primarily for use in repairs in the shop but
does make an occasional sale of these parts.

"4.  Where a garage carries a stock of tires but
does not make independent sales of such tires.  He
does install such tires on customers' cars and makes
a charge for the tires but no charge for labor.  In
some instances there is an exchange made for the
customer's old tires and the difference for the new
tires paid in cash."

The portions of Article 1111d, V.P.C., relevant to this opinion are as follows:

Section 7:

> "The term 'store' as used in this Act shall be construed to mean and include any store or stores or any mercantile establishment or establishments not specifically exempted within this Act which are owned, operated, maintained, or controlled by the same person, agent, receiver, trustee, firm, corporation, copartnership or association, either domestic or foreign, in which goods, wares, or merchandise of any kind are sold, at retail or wholesale."

Section 5(a):

> ". . .Provided that the term 'store, stores, mercantile establishment, and mercantile establishments,' whenever used in this Act shall not include:. . .garages;. . ."

Section 5(c):

> "All. . .establishments. . .exempted. . .by this Act shall file an application as required by Sections 2 and 4 of this Act. If they meet the requirements of this Act for exemption, they shall pay an exemption fee of Four Dollars ($4) for one store and Nine Dollars ($9) for each additional store in excess of one."

The provisions of Article 5 quoted above apply only to garages which qualify as "stores" under Section 7 of Article 1111d, V.P.C. Garages which make no sales, but render "service" only, do not come within the affirmative operations of Article 1111d; consequently, the provisions of Section 5, supra, are inapplicable to such garages. See Attorney General's Opinion No. V-1389 (1952), a copy of which is annexed hereto.

The test of a store is whether sales of goods, wares or merchandise are made at the place in question. Hurt v. Cooper, 130 Tex. 433, 110 S.W. 2d 896 (1937); Montgomery Ward and Company v. State, 169 S.W. 2d 997, affirmed 141 Tex. 626, 175 S.W. 2d 218 (1943). Standard Oil Company of Texas v. State, 142 S.W. 2d 519 (Tex.Civ.App. 1940, error refused) and Humble Oil and Refining Company v. State, 158 S.W. 2d 336 (Tex.Civ.App. 1942, error refused) dealt with the contention that service stations which sold automobile accessories, which were installed on the customer's automobile at the time of sale, were not required to pay the store tax because of the provision of Section 5 of Article 1111d "that the term 'store,

stores, mercantile establishment, or mercantile establishments' whenever used in this Act shall not include:. . .any place of business engaged exclusively in the storing, selling, or distributing of petroleum products and <u>servicing</u> of motor vehicles;. . ." (Emphasis added). The court in each of these cases held that the service stations in question were "stores" within the meaning of Article 1111d; the fact that the accessories were installed on the automobile did not make the transaction purely a "service," so as to qualify the service station for exemption.

We regard the foregoing cases as controlling in the present situation. If a garage makes sales of parts in connection with its operations, it is a "store" within the meaning of Section 7 of Article 1111d; the fact that such parts are installed upon the automobile in the course of repair is immaterial. This conclusion is not altered in cases where a garage submits a bill without detailing the respective charges for service and for parts.[1]

In view of the preceeding discussion, we hold that the garages in each of the four situations you describe are "stores" within the meaning of Article 1111d, V.P.C., and are required to file an application and pay an exemption fee under the terms of Section 5(c) thereof.

## SUMMARY

Garages which make sales of parts in connection with their course of business in making repairs are "stores" within the meaning of the Article 1111d, V.P.C., and are required to obtain an exemption license under the terms of Section 5(c) of said Article. The fact that the parts are installed on the customer's automobile is immaterial. This

---

[1] In this connection see Western Company v. Sheppard, 181 S.W. 2d 850 (Tex.Civ.App. 1944, error refused), which involved the construction of the Act levying a tax upon service rendered in connection with acidizing wells, etc. The court said that the sale of acid or materials in connection with such service was a separable item and "no good reason appears why those engaged in such business could not and should not segregate in each instance a fixed charge for such service from the sales prices of their materials at the well head. In the absence of

conclusion is not altered in cases where a
garage submits a bill without detailing the
respective charges for parts and labor.

Very truly yours,

WILL WILSON
Attorney General

By Jack N. Price
Jack N. Price
Assistant

JNP:bct

APPROVED:

OPINION COMMITTEE:
Geo. P. Blackburn, Chairman

David R. Thomas
J. Milton Richardson
Marvin H. Brown, Jr.
Robert T. Lewis
Richard O. Jones

REVIEWED FOR THE ATTORNEY GENERAL
By:
    W. V. Geppert

---

1 (Con't) such segregation and the fixation of a specific
service charge, since the statute expressly taxes only the
service, regardless of the dominant element of value of the
materials used, the most reasonable and practical method of
arriving at the service charge would be the difference between
the fair and reasonable market value of the acid delivered at
the well head and the total gross charge; or if such market
value cannot be so established, then its actual or intrinsic
value at the well head."